```
UNITED STATES DISTRICT COURT                              (ECF)
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - -:
COACH, INC. and COACH SERVICES,        : 11 Civ. 3574 (BSJ) (JCF)
INC.,                                  :
              Plaintiffs,              :      REPORT AND
                                       :     RECOMMENDATION
     - against -                       :
                                       :
MICHAEL J. McMEINS, individually       :
and doing business as                  :
WWW.CARANISSTORE.COM, "CARANIS         :
STORE," and "CARANIS LITTLE STORE;":
UNKNOWN WEBSITES 1-10; "JOHN DOES"     :
1-10; and UNKNOWN ENTITIES 1-10,       :
                                       :
              Defendants.              :
- - - - - - - - - - - - - - - - - - - -:
TO THE HONORABLE BARBARA S. JONES, U.S.D.J.:
```

This is an action for trademark counterfeiting and infringement and unfair competition brought by Coach Inc. and Coach Services, Inc. (collectively, "Coach") against Michael J. McMeins, individually and doing business as www.carnisstore.com, Caranis Store, and Caranis Little Store; Unknown Websites 1-10; John Does 1-10; and Unknown Entities 1-10. Coach contends that by selling piratical copies of handbags and leather goods, the defendants violated the Lanham Trademark Act of 1946 (the "Lanham Act"), 15 U.S.C. §§ 1114, 1125(a), and 1125(c).

On May 27, 2011, Coach filed its complaint against the defendants. Two days later, Mr. McMeins was served with a copy of the Summons and Complaint, Temporary Restraining Order and all other supporting documents in this action. Despite initial communications between counsel for Coach and Mr. McMeins resulting in an entry of a Preliminary Injunction by Consent, this defendant failed to file an answer or respond to Coach's court-ordered

1

discovery requests. On June 21, 2011, the Clerk of the Court issued a Certificate of Default against Mr. McMeins, and on November 7, 2011, the Honorable Barbara S. Jones, U.S.D.J., entered a default judgment and referred the case to me for an inquest on damages. That inquest was held on February 14, 2012, and although Mr. McMeins was provided with notice, he failed to appear. The following findings are therefore based on the evidence provided by the plaintiff.

Background

Coach manufactures and distributes high quality merchandise, including handbags, wallets, briefcases, footwear, apparel, and accessories. (Tr. at 7; Complaint, ¶ 7; Plaintiff's [Proposed] Findings of Fact and Conclusions of Law dated Dec. 16, 2011 ("Findings"), ¶ 6).[1] The company owns the trademark "COACH" in addition to several related trademarks, all of which frequently appear on the company's goods. (Tr. at 8-10; Complaint, ¶¶ 15, 16; Findings, ¶ 8). The plaintiff's trademarks have achieved a great deal of consumer recognition, not only in the United States but throughout the world, with global sales in the multi-millions of dollars. (Complaint, ¶ 14; Findings, ¶ 7 Affidavit of Tiffany Walden in Support of Plaintiff's Ex Parte Application for Temporary Restraining Order; Order to Show Cause Why a Preliminary Injunction Should not be Issued; Expedited Discovery Order; Asset Restraining Order; and Order Temporary Sealing the Court File dated May 23, 2011 ("Walden Aff."), ¶ 7). Coach's registered trademarks are

---

[1] "Tr." refers to the transcript of the hearing on damages.

symbols of its "quality, reputation and goodwill," and accordingly they have achieved a secondary meaning as identifiers of high quality merchandise. (Complaint, ¶¶ 20, 23, 24; Findings, ¶ 12, 15, 16).

In March 2011, Coach discovered the website, www.caranisstore.com ("the Website"), which was being used to promote and offer for sale handbags bearing couterfeits and infringements of the Coach Registered Trademarks. (Tr. at 4, 5; Complaint, ¶ 25; Findings, ¶ 17; Walden Aff., ¶ 14; Sample of Website Pages, attached as Exh. 2 to Walden Aff.). The Website never identified the bags as replicas but sold the infringing products at reduced prices. (Findings, ¶ 17; Walden Aff., ¶ 14).

Coach has provided substantial evidence that Mr. McMeins is the registrant, owner, operator, or controlling force behind the Website. (Complaint, ¶¶ 9, 10; Findings, ¶ 4). Coach conducted a reverse look-up using the phone number provided on the Website, which revealed that the registrant of the Website was Michael McMeins, located at "116 First Street, Nashua, MN 56565-6501." (Tr. at 5; Findings, ¶ 3; Walden Aff., ¶ 15). Coach also provided proof that Mr. McMeins is the owner, agent, and registrant of the stores doing business as "Caranis Store" and "Caranis Little Store," which are registered in the State of Minnesota at Mr. McMein's address. (Walden Aff. ¶ 16; Lexis Nexis Reverse Look-up, attached as Exh. 3 to Walden Aff.; Findings, ¶ 5).

On April 8, 2011, Coach's agent purchased a Coach handbag from the Website for $74.98 through PayPal. (Tr. at 5; Findings, ¶ 19;

3

Affidavit of Benjamin Kwapisz in Support of Plaintiffs' Ex Parte Application for a Temporary Restraining Order; Order to Show Cause Why a Preliminary Injunction Should not be Issued; Expedited Discovery Order; Asset Restraining Order ("Kwapisz Aff."), ¶ 3; Walden Aff., ¶ 17).  The confirmation of payment listed "Michael McMeins" as the merchant.  (Findings, ¶ 19; Kwapisz Aff., ¶ 4; Walden Aff., ¶ 17).  Upon examination, another Coach agent determined that none of the handbag's parts were of genuine Coach origin, that the bag contained four counterfeits and infringements of the Coach Registered Trademarks, and that the bag was of "very poor quality."  (Tr. at 4, 13-15; Findings, ¶ 20; Complaint, ¶ 16; Trademark Electronic Search System (TESS), attached as Exh. 1 to Complaint;  Kwapisz, ¶ 5; Photographs, attached as Exh. 2 to Kwapisz Aff.; Walden Aff., 19).  Coach's representative testified that Mr. McMeins was not authorized to use these marks.  (Tr. at 12; Complaint, ¶¶ 19, 29, 30).

     At the hearing for damages, Coach's counsel stated that "Coach has been the victim of an unprecedented wave of counterfeiting, much like the other luxury brands."  (Tr. at 4).  As some indication of the actual damages involved, Coach's representative testified that the supposed list price, $259.95, displayed on the Website, was close to the suggested retail price of an actual Coach handbag.  (Tr. at 11-12).  The representative further testified that sale of counterfeit goods damages Coach because it displaces the company's own sales and devalues the Coach brand.  (Tr. at 17).

Based on the default judgment, Coach seeks to recover statutory damages of $200,000 per trademark infringed by the defendants for a total award of $800,000 under the section 1117 of the Lanham Act.[2] (Tr. at 20; Findings, ¶ 29). The award requested includes attorneys' fees and punitive damages. (Tr. at 23).

Discussion

A. Jurisdiction

This court has subject matter jurisdiction over the plaintiff's trademark claim pursuant to 28 U.S.C. §§ 1331 and 1338(a) as well as 15 U.S.C. § 1121.  There is personal jurisdiction over the defendant because he transacted business in New York through an interactive website in connection with the matter at issue. See Kaufhold v. Cyclopian Music, Inc., No. 10 Civ. 4588, 2010 WL 5094630, at *3, *4 (S.D.N.Y. Dec. 14 , 2010); A.W.L.I. Group, Inc. v. Amber Freight Shipping Lines, No. 10 Civ. 5464, 2011 WL 6130149, at *4-10 (S.D.N.Y. Dec. 9, 2011); Enderby v. Secrets Maroma Beach Riviera Cancun, No. 10 Civ. 1015, 2011 WL 6010224, at *4, *12-14 (S.D.N.Y. Dec. 1, 2011); Penguin Group (USA) Inc. v. American Buddha, 16 N.Y.3d 295, 301, 302, 304-07, 921 N.Y.S.2d 171, 173-77 (2011).

B. Liability

Following a default, all factual allegations of the complaint, except those relating to damages, must be accepted as true. Cotton

---

[2] During the evidentiary hearing, Coach's representative testified that the counterfeited bag purchased from the Website and its packaging contained five trademark infringements. However, Coach is only seeking damages for four infringements. (Tr. at 14; Findings, ¶ 29).

5

v. Slone, 4 F.3d 176, 181 (2d Cir. 1993); Gucci America, Inc. v. MyReplicaHandbag.com, No. 07 Civ. 2438, 2008 WL 512789, at *1 (S.D.N.Y. Feb. 26, 2008) (citing Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981)).

In connection with this inquest, the plaintiff has requested damages only for trademark infringements in violation of the Lanham Act, and therefore liability need only be considered with respect to that claim.[3] There are two elements necessary to establish trademark infringement under the Lanham Act: (1) the plaintiff's ownership of a valid trademark and (2) the likelihood of confusion from the defendant's use of that trademark without the plaintiff's permission. Chanel, Inc. v. Louis, No. 06 CV 5924, 2009 WL 4639674, at *10 (E.D.N.Y. Dec. 7, 2009). Here, the allegations in the Complaint clearly establish a valid claim of infringement. The plaintiff has demonstrated ownership of the four marks at issue and has not authorized the defendant to use these marks. Nevertheless, the defendant has produced and sold materials bearing these trademarked designs. And, because of the recognition of Coach as a brand, there is likely to be confusion between its products and the defendant's.

Furthermore, the defendant's failure to appear and defend this

---

[3] Although Coach has asserted four claims under the Lanham Act -- one for trademark counterfeiting pursuant to 15 U.S.C. § 1114, one for trademark infringement pursuant to 15 U.S.C. § 1114, one for federal trademark dilution pursuant to 15 U.S.C. § 1125(c), and one for false designation of origin and false description pursuant to 15 U.S.C. § 1125(a) -- it seeks only one set of statutory damages and thus I only address its claim for trademark infringement.

action permits an inference that he was willful in infringing upon the trademarks. See Malletier v. Apex Creative International Corp., 687 F. Supp. 2d 347, 354 (S.D.N.Y. 2010); Tiffany (N.J.) Inc. v. Luban, 282 F. Supp. 2d 123, 124 (S.D.N.Y. 2003). Accordingly, an award of statutory damages under § 1117(c)(2) is appropriate.

　　C. Damages

Under the Lanham Act, a trademark owner may choose to recover statutory damages or actual damages. 15 U.S.C. § 1117(c). Statutory damages may be awarded in the amount of:

> (1) not less than $1,000 or more than $200,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just; or
>
> (2) if the court finds that the use of the counterfeit mark was willful, not more than $2,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just.

15 U.S.C. § 1117(c).

Additionally, the Court must award statutory damages that both relate to actual damages and constitute an amount sufficient to deter this defendant and others from using counterfeit trademarks in the future. See Bravado International Group Merchandising Services, Inc. v. Ninna, Inc., 655 F. Supp. 2d 177, 191 (E.D.N.Y. 2009); Malletier, 687 F. Supp. 2d at 358. However, "besides setting the cap at $2 million per mark per type of good, and directing that courts award damages that are 'just,' section 1117(c)(2) does not provide guidance for determining the appropriate award in a case involving willful trademark

violations." All-Star Marketing Group, LLC v. Media Brands Co., 775 F. Supp. 2d 613, 622 (S.D.N.Y. 2011); accord Burberry Ltd. v. Euro Moda, Inc., No. 08 Civ. 5781, 2009 WL 4432678 at *4 (S.D.N.Y. Dec. 4, 2009). Thus, "courts have often looked for guidance to the better developed case law under the Copyright Act, 17 U.S.C. § 504, which permits an award of statutory damages for willful copyright infringement." All-Star Marketing, 775 F. Supp. 2d at 622 (citing Malletier, 648 F. Supp. 2d at 504. "As those cases indicate, where, as here, a defendant is shown to have acted willfully, a statutory award should incorporate not only a compensatory, but also a punitive component to discourage further wrongdoing by the defendants and others." Id.

Courts determining damages pursuant to § 1117(c)(2) have considered the following factors:

> (1) the expenses saved and the profits reaped; (2) the revenues lost by the plaintiff; (3) the value of the [trademark]; (4) the deterrent effect on others besides the defendant; (5) whether the defendant's conduct was innocent or willful; (6) whether a defendant has cooperated in providing particular records from which to assess the value of the infringing material produced; and (7) the potential for discouraging the defendant.

Id.

On balance, the factors weigh in Coach's favor. While there is nothing in the record about the revenue earned by the defendant's sale of counterfeit merchandise, or any actual proof that the plaintiff lost revenue from the defendant's infringement, Coach's representative did testify that $259.95 was approximately the suggested retail price for one of the items sold on the Website. Using this figure, the defendant would only have to sell

four thousand such handbags to meet the full amount requested by the plaintiff, a request that includes attorneys' fees and punitive damages.  Furthermore, the value of the trademark is likely to be quite high given the worldwide recognition of the Coach brand as a high-end make of leather goods.

Furthermore, "the goal of deterring similar conduct by other enterprises requires a substantial award." All-Star Marketing, 775 F. Supp. 2d at 623 (citing Louis Vuitton Malletier, S.A. v. LY USA, No. 06 Civ. 13463, 2008 WL 5637161 at *2 (S.D.N.Y. Oct. 3, 2008)). Similarly, a high award is warranted to deter future infringing activity by the defendant himself.  Finally, given that the defendant's acts were willful, the $800,000 sought here -- which amounts to $200,000 per infringement -- is an appropriate award as it effectively serves the compensatory, punitive, and deterrent purposes of 15 U.S.C. § 1117(c).

Conclusion

For the reasons set forth above, I recommend that judgment be entered in favor of the plaintiff and against the defendants for $800,000 in statutory damages.  Pursuant to 28 U.S.C. § 636(b)(1) and Rules 72, 6(a), and 6(d) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from this date to file written objections to this Report and Recommendation.  Such objections shall be filed with the Clerk of the Court, with extra copies delivered to the chambers of the Honorable Barbara S. Jones, Room 1920, and to the chambers of the undersigned, Room 1960, 500 Pearl Street, New York, New York 10007.  Failure to file timely

objections will preclude appellate review.

Respectfully submitted,

_____
JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

Dated:      New York, New York
            March 9, 2011

Copies mailed this date to:

Brian W. Brokate, Esq.
John Macaluso, Esq.
Walter-Michael Lee, Esq.
Gibney, Anthony & Flaherty, LLP
665 Fifth Avenue
New York, New York  10022

Michael J. McMeins
116 First Street
Nashua, MN  56565-6501